IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JENNIFER McDANIEL, Individually and as
Personal Representative of the Estate of Robert
McDaniel, deceased, and as Parent and Next Friend
of Natasha, Cody and Shayna McDaniel,

        Plaintiff,

vs.                                             No. CIV 00-959 LFG/KBM (ACE)

UNITED STATES of AMERICA,

        Defendant.

## **MEMORANDUM OPINION AND ORDER**
## **GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

THIS MATTER comes before the Court on the Motion for Summary Judgment [Doc. 61], filed by Defendant United States of America. No oral argument is necessary; this matter may be decided on the briefs. The case arose out of a tragic accident that took the life of Robert McDaniel. The losses suffered by his spouse, Jennifer, and their children, Natasha, Cody and Shayna, are enormous. However, neither the magnitude of the tragedy nor the enormity of the Plaintiffs' losses control the law's analysis, and therefore, for the reasons given below, the Court will grant Defendant's motion.

### **Facts and Procedural History**

This is a wrongful death case in which plaintiff's decedent Robert McDaniel, an employee of Brazos Roofing which had a contract with the U.S. Air Force to repair roofs at Kirtland Air Force Base (KAFB), fell from a barrel shaped roof on the base, in the course of his employment with Brazos, and sustained fatal injuries.

Plaintiff alleges that the United States is liable under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b) and 2671, because it hired Brazos to do the roofing work even though it was aware that the company was unqualified to perform work on barrel-shaped roofs, and was further aware that the work was being performed in an unsafe manner.

Defendant argues that summary judgment is appropriate because: (1) the statutory "independent contractor exception" applies here since the roofing work was entrusted to decedent's employer, an independent contractor, and the U.S. did not exercise the requisite control over the roofing work so as to render the decedent and other employees of the roofing contractor "employees of the Government" as required by the FTCA; and (2) plaintiff has not shown that the U.S. was itself negligent through any of its own employees.

## **The Independent Contractor Exception**

The FTCA provides a limited waiver of sovereign immunity. <u>United States v. Orleans</u>, 425 U.S. 807, 96 S. Ct. 1971 (1976). The United States is liable under the FTCA for the negligent acts "of any employee of the Government while acting within the scope of his office or employment," 28 U.S.C. § 1346(b), and the Act defines "employee of the government" to include officers or employees of any federal agency, and persons acting on behalf of a federal agency in an official capacity. 28 U.S.C. § 2671. The term "federal agency" includes executive departments, judicial and legislative branches, "but does not include any contractor with the United States." <u>Id</u>.

> Billions of dollars of federal money are spent each year on projects performed by people and institutions which contract with the Government. These contractors act for and are paid by the United States. They are responsible to the United States for compliance with the specifications of a contract or grant, but they are largely free to select the means of its implementation . . . [B]y contract, the Government may fix specific and precise conditions to implement

2

> federal objectives. Although such regulations are aimed at assuring compliance with goals, the regulations do not convert the acts of entrepreneurs . . . into federal government acts.

Orleans, 425 U.S. at 816.

### A. Right of Control.

As noted above, the general rule is that the United States in not liable for the acts of independent contractors or their employees. Lurch v. United States, 719 F.2d 333, 336 (10th Cir. 1983). However, the government may involve itself in the day-to-day operations of the contractor to such an extent that the contractor's employees are considered to be government employees for purposes of the FTCA. A "critical factor" in determining applicability of the independent contractor exception under the FTCA is "the power of the Federal Government 'to control the detailed physical performance of the contractor," Id., at 337, *quoting* Logue v. United States, 412 U.S. 521, 527-28, 93 S. Ct. 2215, 2219 (1973), and "whether the Government supervises the day-to-day operations of the individual" employee. Lilly v. Fieldstone, 876 F.2d 857, 858 (10th Cir. 1989).

Factors to be considered in making this determination include: (1) the intent of the parties; (2) whether the U.S. controls only the end result (which implies an independent contractor relationship) or whether it may also control the manner and method of reaching the result (which implies an employee relationship); (3) whether the contractor uses his or her own equipment, or that of the U.S.; (4) who provides liability insurance; (5) who pays social security tax; (6) whether federal regulations prohibit federal employees from performing such contracts; and (7) whether the individual has the authority to subcontract to others. Lilly, at 859.

In addition, numerous cases have held that the government's retention of the right to inspect a contractor's work and to enforce certain safety measures and ensure compliance with the contract

does not transform an independent contractor into a government agency, nor its employees into government employees. "The general right to inspect and make safety requirements is not enough. Control requires 'such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.'" Flynn v. United States, 631 F.2d 678, 680 (10th Cir. 1980); Craghead v. United States, 423 F.2d 664 (10th Cir. 1970).

The fact that the United States retains the right to call a halt to a project if it finds that the work is proceeding in an unsafe manner does not in and of itself override the general rule of non-liability for torts of the independent contractor. The test remains whether "there was . . . such an affirmative control and direction by Government officials over the employees [of the contractor] or interference in the work of the contractor as to create conditions where there was in fact no independent contractor." United States v. Page, 350 F.2d 28, 31 (10th Cir. 1965); *see also*, Bowman v. United States, 65 F.3d 856, 860 n.3 (10th Cir. 1995).

The United States may monitor a contractor's activities as necessary to ensure that the desired result is achieved and will not thereby override the independent contractor exception, even if it "exercise[s] considerable control over [the contractor] to the extent that the contract was very detailed and specific," so long as it does not supervise the contractor's day-to-day operations in such a way and to such an extent that the contractor is essentially an employee. Curry v. United States, 97 F.3d 412, 415 (10th Cir. 1996).

> Indeed, the very length and detail of the contract entered into by the United States and Murphy suggests, to us, an independent contractor relationship between the parties. To us it is doubtful that a master-servant relationship, where the master tells the servant what to do and when to do it, would require a contract of the type here involved.

Norton v. Murphy, 661 F.2d 882, 884 (10th Cir. 1981).

In general, the control determination must be made by viewing the competing factors as a whole and balancing them against one another. Lilly, at 860; Duplan v. United States, 188 F.3d 1195, 1202 (10th Cir. 1999). Although this determination involves consideration of the facts, the question whether an independent contractor relationship exists is a question of law, Curry, at 414, and thus is appropriately made on summary judgment.

B. Application of Control Test to the Air Force-Brazos Relationship.

It is apparent to the Court, as a matter of law, that the parties' intent was to create a classic independent contractor relationship. Under the contract,[1] the Air Force hired Brazos to replace roofs at KAFB and specified in detail the work to be performed. (Ex. B to Defendant's opening memorandum, hereafter referred to as "DOM"). The contract specifies that the government is to provide utilities and a site for the contractor's office trailer and outdoor storage of materials. Plaintiff claims there is a factual dispute as to whether these two items, utilities and space for an office and storage, were the total extent of the support the KAFB was to provide to Brazos. (Plaintiff's response memorandum, hereafter referred to as "PResM," at 3).

Be that as it may, the contract does not state that the government has any oversight supervision or day-to-day control of the Brazos work sites; instead, the contract provides that Brazos is responsible for hiring, supervising and compensating its own employees and for maintaining worker's compensation and liability insurance, and the deceased, Robert McDaniel, was himself

---

[1] Defendant refers several times to the terms of the original contract with Brazos, under which the firm was hired to work only on "built-up" (*i.e.*, flat) roofs at KAFB. The decision to hire Brazos to work on the oddly-shaped barrel roof came later and was the subject of a contract modification. The modification refers back to the original contract, and Plaintiff's argument is unconvincing that the only "contract" at issue is the modification. The terms of the original contract were still in force at the time the accident occurred and were altered only to the extent set forth in the brief modification document.

5

responsible for supervising the day-to-day operations of the work performed under the contract. (DOM, Ex. A at ¶ 3; Ex. B at 0414; Ex. K at 19, 52). Brazos retained the authority to subcontract. (Ex. C to DOM, at 0502).

In addition, by entering into the contract, Brazos agreed to abide by all applicable safety laws and regulations. (Ex. A to DOM, at ¶ 4). Included in the applicable regulations is a provision that Air Force safety rules do not apply to:

> employees, or working conditions of employees, of private contractors performing work under government contracts. Contractors are solely responsible for compliance with OSHA standards and the protection of their employees. Air Force interest is to protect Air Force personnel working in or around contractor operations . . . Air Force safety, fire protection, and BE officials may enter a contractor's workplace to verify working conditions of Air Force personnel . . . [but such officials] do not have the authority to direct contractor activities unless a condition exists which presents imminent danger to Air Force personnel.

(Ex. D to DOM, at ¶ 9). In addition, the KAFB Contractor Safety Brochure (Ex. E to DOM) instructs the contractor that it is "responsible for the safety and health of your employees," whereas the Air Force's responsibility is limited to the safety and health of its own employees and military personnel and protection of its facilities and equipment.

Edward Castillo, the contracting officer for the Air Force employed at KAFB, testified in his deposition that the Air Force does not normally tell a contractor like Brazos how to perform the job; rather, "We leave it up to the contractor. They are the experts and that's why we hire them." (Ex. K to DOM, at 121). Dennis Hein, safety officer for the Air Force at KAFB, testified that he conducted inspections of the work site but only for the purpose of protecting Air Force personnel and property, not for the safety of the contractor's personnel. (Ex. L to DOM, at 55, 79, 89-90, 108).

6

Jesse James, quality assurance evaluator for the Air Force employed at KAFB who was the "technical inspector" on the Brazos project, stated that his function as inspector was to make sure the government received the quality of work it was paying for, and to make sure the contract was being followed; "I'm not there to tell or instruct the contractor how to do his job . . . [or] what kind of equipment to use . . . [M]y job is not to determine how safe the contractor is." (Ex. M to DOM, at 20-22, 30, 56, 58, 74). Mr. James concluded:

> Simply put, I'm a quality assurance evaluator, not a safety inspector . . . The contractor is responsible for the contractor's personnel, that's just simply not my responsibility, and . . . it's not the government's responsibility. I'm responsible to make sure that the work happens, not how the contractor protects his people. That's simply his job.

(Id., at 99-100).

Scott Magness, a consultant to the Air Force regarding fall protection for Air Force maintenance personnel at KAFB, testified that he had a concern about Brazos's lack of adequate fall protection and expressed his concern to McDaniel and to Air Force officers. However, he stated further that the ultimate responsibility for fall protection rests with the contractor. (Ex. N to DOM, at 79-80, 87-88).

And Mario Solano, an OSHA employee who investigated the McDaniel fall at KAFB, testified that government personnel have no authority to control the job site for safety, since the contractor has sole responsibility for the safety of its employees. He stated further that the decedent, Robert McDaniel, was himself the supervisor at the KAFB work site, that he represented the management of Brazos and was responsible for the safety of Brazos's employees at the site. (Ex. O to DOM, at 109-110, 141-42, 144, 150, 187-88). Plaintiff asserts that Solano testified in his deposition that the

7

government had "control" of the work site. This is inaccurate; Solano actually stated, at the portion of the deposition cited by Plaintiff, that the Air Force needed "to control the work site more" following McDaniel's fatal fall, in the sense they should control access by the contractor's employees after working hours. (Ex. 14 to PResM, at 74-75).

It is true that, in this case, the government retained the right to stop the roofing work if it became aware of a safety violation. (Ex. K to DOM, at 119-121; Ex. 33 to PResM, at 1). However, as noted above, this factor does not in itself imply that the government retained control of the day-to-day operations of the contractor, which is the ultimate test. In any case, Castillo testified that the retention of authority to call a halt to a contractor's work was meant primarily to protect government personnel, and the primary responsibility for protection of the contractor's employees remained with the contractor. (Ex. K to DOM, at 119-120).

Plaintiff also points to evidence indicating that the government had the right and duty to observe and make recommendations as to adequacy of the contractor's inspection, safety and environmental programs as they pertain to the contract, and to report deviations to the contracting officer. While this may be true, retention of such a right to inspect does not take this contract out of the independent contractor exception. *See*, Duplan; Craghead; Flynn; Page; Bowman.

Plaintiff also argues that Dan Applegarth, the manufacturer's representative who made frequent visits to the job site while the work was proceeding on the barrel-roofed building, was in fact a "second set of eyes" for Air Force personnel in determining whether the roof was being installed properly. (PResM, at 8). Applegarth testified, however, that he provided training to Brazos's employees in installation of the barrel roof, and went to the job site daily in order to ensure that the specifications for that particular roof were being followed and to answer questions of work crew.

(Ex. J to DOM, at 22, 29). In doing this, he was functioning on behalf of his employer, the manufacturer of the roofing materials, who had given a 30-year warranty on the roof and had an interest in ensuring that it was installed properly. Plaintiff cites nothing in the record to support her argument that Applegarth thereby assumed the mantle of "government employee" and became responsible for the safety of Brazos's employees.

On balance, taking into account all of the factors noted above, it is clear as a matter of law that Air Force personnel, while they might have had the authority to inspect the work site, did not supervise the day-to-day operations of Brazos nor assume responsibility for the safety of Brazos's employees to the extent necessary to take this case out of the independent contractor exception. The person primarily responsible for McDaniel's safety on the barrel roof was McDaniel himself, as he was the supervisor for the roofing project and was or should have been knowledgeable about the need for proper harnessing and security on the rooftop.

### **Direct Negligence of Government Employees**

Plaintiff contends that, even if the independent contractor exception does apply, the United States is nevertheless liable for the negligent acts of its own employees.

Plaintiff alleges, first, that government employees were aware that the Brazos was not using proper fall protection for its employees but took no steps to stop the work, or otherwise ensure that proper safety procedures were implemented, and that this is a violation of Defendant's duty as a landowner under New Mexico tort law. Plaintiff contends, in addition, that the government was negligent in hiring Brazos in the first place without taking adequate steps to ensure that the company was qualified to work on the oddly shaped barrel roof. Defendant counters that Plaintiff has not raised a genuine factual issue on the question of its direct negligence, and the Court agrees.

9

A. Government's Duty as Landowner.

Plaintiff points to New Mexico law on landowner liability to support its argument that the government was negligent in failing to maintain a safe work site for Brazos's employees. It is doubtful whether state law can override the independent contractor exception, however. As discussed above, without the requisite control, which is lacking here, the United States has no duty to ensure the safety of employees of an independent contractor; that duty belongs to the contractor itself. United States Fidelity & Guaranty Co., 446 F.2d 851, 853 (10th Cir. 1971).

> The broad independent contractor exemption is itself controlling in this case. As the Supreme Court pointed out in [Logue, *supra*], Congress did not leave the independent contractor exemption subject to the vagaries of state law departures from the exemption and the courts are not 'free to abrogate the exemption that the Act provides.'

Lurch, at 338.

Even if the Court were to find that state tort law should be considered, in spite of the applicability of the independent contractor exception, summary judgment would still be appropriate under the facts of this case. In Flynn v. United States, *supra*, at 680-81, the Tenth Circuit rejected the plaintiff's arguments that the United States was liable (1) as an employer who hires an independent contractor but retains control of the work ("The general right to inspect and make safety requirements is not enough [to establish the requisite control] . . . Dynalectron contracted to do the work safely and it failed to do so"); or (2) as a landowner who fails to warn or protect invitees against a dangerous condition on the land ("Nothing in the record shows that the accident resulted from any condition of the government's air base").

The same conclusion is appropriate in the present case. It is clear that the United States did not retain control of Brazos's work, as discussed above. And any duty to warn McDaniel of the

10

"dangerous condition" of the barrel shaped roof was at least as apparent to McDaniel, who was the very supervisor in charge of the roofing project and responsible for the safety of Brazos's work crew, as it was to the Defendant.

The Tenth Circuit also rejected the argument, which Plaintiff raises in this case, that the government should be held liable as the employer of an independent contractor hired to do inherently dangerous work. The court reasoned that the "non-delegable duty" exception to the general rule that an employer is not liable for the torts of its independent contractors is inapplicable in a FTCA case, since "the United States may not be held liable on any absolute liability theory." Flynn, at 681.

Although Plaintiff cites authority in her response memorandum (at 20-21) contrary to Defendant's position on the issue of landowner liability, none of it is from the Tenth Circuit, and the Court does not find it persuasive.

B. Negligent Hiring.

Finally, Plaintiff contends that the United States was negligent in hiring Brazos to do roofing work on the unusual barrel shaped roof of Building 37506, when it knew or should have known that Brazos was inexperienced and unqualified for this type of work. Plaintiff asserts that the government would have discovered this fact if it had done an adequate investigation before entering into the contract modification which allowed Brazos to go beyond the flat-roof work for which it originally been hired.

The record indicates that the government required that Brazos be certified by the manufacturer to install the type of roof needed on Building 37506, that Brazos was in fact experienced with and certified for this type of work, and that the company supplied the necessary assurances to the government in this regard. (DOM, Ex. A at 1,3; Ex. J at 17-19, 23-26). Plaintiff

11

argues only that Brazos's incompetence in barrel roof repair was "obvious," but she does not point to any record evidence to support this assertion and has not raised an issue of fact on this point which would preclude summary judgment.

## **Order**

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment [Doc. 61] is granted, and the case is dismissed with prejudice.

_Lorenzo F. Garcia_
Lorenzo F. Garcia
United States Magistrate Judge